

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

October 29, 1949

Hon. Hall H. Logan, Chairman
State Board of Control
Austin, Texas

Opinion No. V-941

Re: Authority of the Board
of Control to handle
utility contracts for
eleemosynary institu-
tions, institutions of
higher learning and
State departments.

Dear Mr. Logan:

You have requested an opinion concerning the au-
thority of the Board of Control to handle utility contracts
for the eleemosynary institutions not under its supervision,
the institutions of higher learning and the State departments.

In answering, we assume your question is whether
the services available from public utilities must be pur-
chased by the Board of Control. We further assume that you
refer only to power, light, telephone, gas, water, sewer,
and similar services provided by connection with a community
system and which may be obtained from only one source.

Considering first the eleemosynary institutions
and the higher educational institutions it is our opinion
that the statutes do not require that such utility services
be purchased by the Board of Control.

The purchasing power of the Board of Control is
governed by Chapter 3, Title 20, V.C.S., which creates the
Board's purchasing division. When taken together, the stat-
utes of this chapter point to the one idea: the purchase
of supplies by competitive bidding. Provision is made for
all phases of the purchase of supplies in this manner. In-
cluded are provisions for a mailing list, letting of the
contracts after advertising, sealed bids and their requi-
sites, rejection of certain bids by the Board, equal bids,
separate bids, opening of bids and the requirement of a
bond to accompany bids. Construing these statutes of Chap-
ter 3 together, the purchasing power of the Board of Con-
trol is limited to only those items which are the proper
subject of competitive bidding.

A public utility is usually a monopoly operating under a franchise with the type of service defined and rates controlled. These factors make purchase of public utility services on the basis of competitive bids impracticable. The courts have recognized these conditions and have held that purchases of utility services do not come within statutes which require "supplies" to be purchased by competitive bidding. Morris v. Town of Louisburg, 33 S.E.2d 484 (N.C. Sup. 1945); Washington Fruit and Produce Co. v. City of Yakima, 100 P.2d 8 (Wash. Sup. 1940); Tanner v. Town of Auburn, 79 Pac. 494 (Wash. Sup. 1905); Gleason v. Dawson, 51 N.Y.S. 337 (App. Div. 1898); Drew v. Village of White Plains, 142 N.Y.S. 577 (App. Div. 1913); Milwaukee Electric Ry. and Light Co. v. City of Milwaukee, 181 N.W. 298 (Wis. Sup. 1921).

Public utility services are not "supplies" within the scope of the statutes and therefore the Board of Control would not be required to make such purchases.

We have not, in the absence of a specific question, considered the inclusion within a public utility contract of items other than the primary service to be furnished. Generally speaking, such a contract should cover nothing extraneous to the furnishing of service.

You have further inquired as to the Board of Control's authority to handle utility contracts for the State departments. The Board is designated as custodian of public buildings by Article 665, V.C.S. Therefore, utility service used in connection with the maintenance of buildings in the custody of the Board should be procured by the Board.

## SUMMARY

The Board of Control is not required to let public utility contracts for the eleemosynary institutions not under its supervision or those of institutions of higher learning. Utility service used in connection with the maintenance of buildings in the custody of the Board of

Hon. Hall H. Logan, page 3 (V-941)

Control should be procured by the Board.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By  *Thomas E. Taulbee*
Thomas E. Taulbee
Assistant

TET:rt:gw

APPROVED

*Joe R. Greenhill*
FIRST ASSISTANT
ATTORNEY GENERAL